Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| SUCESIÓN JOSÉ ARMANDO TORRES RIVERA, WALESKA MORALES COLÓN<br><br>Demandante-Peticionario<br><br>Vs.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Demandado-Recurrido | TA2026AP00224 | *APELACIÓN* Acogida como *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. CA2021CV03390<br><br>Sala: 409<br><br>Sobre: VIOLACIÓN DE DERECHOS CIVILES |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de abril de 2026.

Comparece ante nos la parte peticionaria, la Sucesión de José Armando Torres Rivera, compuesta por Waleska Morales Colón (en adelante, parte peticionaria o Morales Colón), por medio del presente recurso que, acogemos como un *certiorari*, pero conservamos la clasificación alfanumérica otorgada por la Secretaría de este Tribunal, y nos solicita la revisión de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala de Carolina, el 10 de noviembre de 2025, notificada el 12 de noviembre de 2025. Mediante esta, el Foro Primario denegó la solicitud de reapertura presentada por la parte peticionaria, así como su petición para enmendar la demanda de epígrafe.

Por los fundamentos que expondremos a continuación, *se expide* el auto solicitado y *se confirma* la *Resolución* recurrida.

*-I-*

El 13 de diciembre de 2021 el señor José Armando Torres Rivera (en adelante, Torres Rivera) presentó una *Demanda* sobre

daños y perjuicios, en contra de la parte recurrida, el Estado Libre Asociado de Puerto Rico (en adelante, parte recurrida o ELA).[1] En resumen, el señor Torres Rivera alegó que, por hechos ocurridos el 31 de agosto de 1990, y mediando culpa y/o negligencia, la agente Carmen Quiñones, el agente Edwin Vázquez, los fiscales Cruz Esteves y Marisol Rivera, todos funcionarios del ELA, lo acusaron ilegalmente por el delito de secuestro y agresión sexual. Como consecuencia de ello, sostuvo que fue sentenciado a doscientos veinticuatro (224) años de cárcel, de los cuales cumplió más de veintisiete (27) años. Adujo que, el 14 de diciembre de 2020, el Ministerio Público aceptó que dicha acusación fue falsa e injusta, así como que admitió que el señor Torres Rivera no cometió el delito por el cual fue convicto.

A consecuencia de lo anterior, el señor Torres Rivera arguyó que sufrió angustia física y mental severa, al que perdió su reputación, dignidad y honra, y contrajo una enfermedad crónica. Siendo así, el señor Torres Rivera adujo que la parte recurrida era responsable de forma vicaria por los daños causados por los funcionarios antes mencionados. Solicitó que se obviara el límite estatutario de reclamaciones contra el ELA, y se le concediera una indemnización de cinco millones de dólares ($5,000,000.00) por los daños y angustias mentales sufridas, tanto durante el proceso judicial como durante el tiempo que estuvo encarcelado. Además, solicitó dos millones de dólares ($2,000,000.00) por concepto del cuidado médico especializado que incurrió y tendrá que recibir en el futuro, por la referida enfermedad que contrajo.

Posteriormente, el 2 de marzo de 2022, la representación legal notificó el fallecimiento del señor Torres Rivera, y solicitó un término para enmendar la demanda de epígrafe.[2]

---

[1] Apéndice del recurso, Entrada Núm. 1.
[2] *Íd.*, Entrada Núm. 6.

Tras varios asuntos procesales impertinentes pormenorizar, el 13 de abril de 2022, el ELA presentó *Aviso de Injunction Paralizando la Litigación del Presente Caso y Sobre el Requisito de Presentar una Solicitud de Gastos Administrativos ante el Tribunal de Título III*.[3] Mediante esta, alegó que el foro primario carecía de jurisdicción para continuar con el trámite judicial del caso en virtud del interdicto permanente contemplado en el *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (en adelante, *Confirmation Order*) emitido por el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (en adelante, Tribunal de Distrito Federal), encargado de la restructuración de la deuda del ELA bajo el Título III del *Puerto Rico Oversight Management and Economic Stability Act* (PROMESA), 48 USC sec. 2101, *et seq.*, y el *Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Plan Of Adjustment of the Communwealth of Puerto Rico, et al. Pursuant to Title III of* PROMESA *and (B) Occurence of the Effective Date*. En virtud de ello, solicitó la paralización del caso de epígrafe. Igualmente, señaló que el presente caso debía tramitarse a través del proceso de solicitudes de gastos administrativos (*administrative expense claim*) ante el Tribunal del Distrito Federal.

Más adelante, el 5 de diciembre de 2022, la parte peticionaria solicitó la sustitución del señor Torres Rivera por su única y universal heredera, la señora Morales Colón.[4] Además, presentó una *Moción en Oposición a "Aviso de Injunction [...]".*[5] En resumidas cuentas, esta alegó que la paralización solicitada por el ELA no era

---

[3] *Íd.*, Entrada Núm. 8.
[4] *Íd.*, Entrada Núm. 18.
[5] *Íd.*, Entrada Núm. 20.

de aplicación al caso de epígrafe por haberse presentado la demanda posterior a la petición de quiebra. El 12 de diciembre de 2022, el Tribunal de Primera Instancia autorizó la sustitución de parte.[6]

En respuesta, el 22 de diciembre de 2022 el ELA presentó una *Réplica a Moción en Oposición a Aviso de Injunction.*[7] En la misma, aclaró que, tanto la paralización, como el proceso del *administrative expense claim* ante el Tribunal de Distrito Federal, era de aplicación a toda reclamación monetaria que se hubiese presentado contra el caudal del ELA posterior a la fecha de la petición de quiebra pero antes de la fecha de efectividad del Plan de Ajuste al igual que la misma excediera los limites estatutarios dispuestos en la *Ley de Reclamaciones contra el Estado*, Ley Núm. 104 del 29 de junio de 1955, según enmendada, 32 LPRA sec. 3077 *et seq.*

Así las cosas, el 18 de enero de 2023, el Tribunal de Primera Instancia notificó una *Sentencia.*[8] Mediante esta, el Foro Primario ordenó la paralización de los procedimientos por falta de jurisdicción, así como que señaló que la parte peticionaria debía presentar su reclamo ante el Tribunal de Distrito Federal, bajo el procedimiento del *administrative expense claim.*

Surge del expediente que, en igual fecha, la parte peticionaria presentó el referido *administrative expense claim* ante el Tribunal de Distrito Federal.[9] No obstante, el 12 de junio de 2024, el Foro Federal emitió un *First Order Granting In Part The Six Hundred Thirteenth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico, The Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority to Late-Filed Administrative Expense Claims,*

---

[6] *Íd.*, Entrada Núm. 22.
[7] *Íd.*, Entrada Núm. 24.
[8] *Íd.*, Entrada Núm. 28.
[9] *Véase*, Reclamo Núm. 180825 en el Caso Núm. 17-03283-LTS.

mediante la cual no autorizó su reclamación por haberse presentado de forma tardía.[10]

Posteriormente, el 28 de octubre de 2025, la parte peticionaria presentó ante el Tribunal de Primera Instancia una *Moción en Solicitud de Reapertura.*[11] Mediante esta, alegó que el *Confirmation Order* estableció una excepción al proceso del *administrative expense claim*, por lo que las reclamaciones presentadas al amparo de la Ley Núm. 104, supra, dentro del límite de reclamación estatutario de setenta y cinco mil dólares ($75,000.00) y ciento cincuenta mil dólares ($150,000.00) estaban exentas de presentar la referida solicitud ante el Foro Federal y podrían continuar su litigación. Por ello, solicitó que se ordenara la reapertura del presente caso y se le permitiera enmendar la demanda para reducir la cuantía reclamada a setenta y cinco mil dólares ($75,000.00). No obstante, el 12 de noviembre de 2025, el Tribunal de Primera Instancia declaró *No Ha Lugar* la petición.[12]

Inconforme, y tras denegada una previa solicitud de reconsideración, el 2 de marzo de 2026, la parte peticionaria presentó el recurso de epígrafe. En el mismo, señaló la comisión del siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE CAROLINA AL NO PERMITIR LA ENMIENDA A LA DEMANDA SOLICITADA POR LA SUCESIÓN DE JOSÉ ARMANDO TORRES RIVERA Y DENEGAR LA REAPERTURA DEL CASO DE AUTOS.

Por su parte, el 24 de marzo de 2026, la parte recurrida presentó su *Alegato en Oposición.* Siendo así, perfeccionado el recurso y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

---

[10] Apéndice del recurso, Entrada Núm. 43, Anejo 2.
[11] SUMAC del Tribunal de Primera Instancia, Entrada Núm. 33.
[12] *Íd.*, Entrada Núm. 38.

*-II-*

*-A-*

Sabido es que, el 30 de junio de 2016, entró en vigor la Ley PROMESA, *supra.* En lo pertinente, el Título III de dicho estatuto, *supra*, permite que ciertas entidades del Gobierno de Puerto Rico, conocidas como *covered entities*, presenten una petición de quiebra a través de la Junta de Supervisión Fiscal (conocida en inglés como el *Financial Oversight and Management Board*). A esos efectos, el 3 de mayo de 2017, el Gobierno de Puerto Rico presentó una petición de quiebra ante el Tribunal de los Estados Unidos para el Distrito de Puerto Rico. Conforme a lo dispuesto en el Código de Quiebras Federal, 11 USC sec. 362(a), dicha solicitud tuvo el efecto de paralizar automáticamente los procedimientos que se estuvieran llevando contra el Estado y sus funcionarios.

Tras los incidentes de rigor, el 18 de enero de 2022, en el caso *In re: The Financial Oversight and Management Board for Puerto Rico,* Caso Núm. 17-03283-LTS, el Foro Federal aprobó el *Plan de Ajuste de la Deuda* (en adelante, Plan de Ajuste), por conducto del *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (en adelante, *Confirmation Order*). La misma entró en vigor el 15 de marzo de 2022.

Ahora bien, en virtud del párrafo 59 del *Confirmation Order,* se estableció un *Injunction on Claims,* el cual mantuvo la paralización de las reclamaciones contra el Estado. Además, se configuró un procedimiento de solicitudes de gastos administrativos (*administrative expense claim*) que aplicaría a aquellas reclamaciones que se hubiesen instado en o antes del 15 de marzo

de 2022 cuando se aprobó el Plan de Ajuste. Específicamente, dicho

párrafo dispuso lo siguiente:

> **59. <u>Injunction on Claims</u>**. Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors.

En lo concerniente a las solicitudes de gastos administrativos,

el párrafo 44 del *Confirmation Order* estableció lo siguiente:

> **The last day to file proof of Administrative Expense Claims shall be ninety (90) days after the Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and the Debtors and Reorganized Debtors shall have no obligation with respect thereto**; provided, however, that no proof of

Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of the applicable Government Parties expressly granting such Administrative Expense Claim, (b) is a Professional Claim, (c) is an intergovernmental Claim, (d) is an Administrative Expense Claim of the IRS for the payment of taxes incurred by any of the Debtors during the period from and after the Commonwealth Petition Date, the ERS Petition Date, or the PBA Petition Date, as applicable, (e) relates to actions occurring in the ordinary course during the period from and after the respective Debtor's petition date up to and including the Effective Date, (f) relates to a Claim that is subject to the provisions of the ACR Order, including, without limitation, "grievance claims" relating to any of the Debtor's collective bargaining agreements, or (g) is the subject of a pending motion seeking allowance of an administrative expense pursuant to section 503(b) of the Bankruptcy Code as of the entry of this Confirmation Order; and, provided, further, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interests of the Debtors and Reorganized Debtors, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof. (Énfasis nuestro).

A esos efectos, el Artículo I, Sección 1.52, del *Confirmation Orden* define un *administrative expense claim* como sigue:

A Claim against the Debtors or their Assets constituting a cost or expense of administration of the Title III Cases asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, and otherwise complying with applicable Puerto Rico law, including, without limitation, subject to the occurrence of the Effective Date, and except as provided in Section 3.5 hereof, Consummation Costs and PSA Restriction Fees; provided, however, that, under no circumstances shall an Administrative Expense Claim include the PBA Administrative Expense Claim.

A pesar de que el *Confirmation Order* estableció inicialmente como fecha límite el 13 de junio de 2022 para que los acreedores presentaran la referida solicitud de gastos administrativos, el 20 de octubre de 2022, mediante el *Orden Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction*, el

Foro Federal extendió el término hasta el 18 de enero de 2023.[13] De igual forma, se estableció que ciertas reclamaciones estarían exentas de tener que presentar este tipo de solicitud, al igual que no se verían afectadas por el *injunction* impuesto. Respecto a ello, el párrafo 5 de dicha Orden dispuso lo siguiente:

> **The requirement to file a proof of Administrative Expense Claim pursuant to decretal paragraph 44 of the Confirmation Order shall not apply to any of the following claims or causes of action arising from and after the applicable petition date with respect to the Commonwealth,** ERS, and PBA and prior to the Effective Date: (i) Eminent Domain/Inverse Condemnation Claims, (ii) claims for property seized by the Debtors pursuant to the Uniform Forfeiture Act of 2021, 34 L.P.R.A. 1724 et seq., (iii) claims for attorneys' fees and costs pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. 1400 *et seq.*, (iv) tax refund claims, and **(v) claims authorized to be asserted pursuant to 32 L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000, as applicable.** (Énfasis nuestro).

En consecuencia, se permitió la continuación de los litigios que se hubiesen presentado contra el Estado, al amparo de la *Ley de Reclamaciones contra el Estado*, supra. Específicamente, se autorizó la continuación de los procedimientos de aquellas reclamaciones dentro de los límites estatutarios dispuesto en dicho estatuto. Además, en el párrafo 7 de la referida Orden, el Tribunal de Distrito Federal ordenó la publicación de su dictamen, mediante edicto en los siguientes periódicos e idiomas: "(i) *El Nuevo Dia* (in Spanish), (ii) *Caribbean Business* (in English), (iii) *El Nuevo Herald* (in Spanish), (iv) *The New York Times* (in English), (v) *The Bond Buyer* (in English), (vi) *El Vocero* (in Spanish), and (vii) *Primera Hora* (in Spanish)".

*-B-*

Por su parte, la Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.1, permite a las partes enmendar sus alegaciones en

---

[13] *Véase*, Docket Núm. 22650 en el Caso Núm. 17-03283-LTS

circunstancias específicas. La referida disposición reza de la siguiente forma:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo, enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria, y el permiso se concederá liberalmente cuando la justicia así lo requiera. [...]. *Íd.*

Ahora bien, nuestro Máximo Foro ha reconocido que la autorización para enmendar las alegaciones debe concederse liberalmente. *Colón Rivera v. Wyeth Pharm.,* 184 DPR 184, 198 (2012). Esto se debe a la política pública de nuestro ordenamiento de que los casos se ventilen en sus méritos. *Íd.,* pág. 198. No obstante, la discreción que ostentan los tribunales no opera de forma infinita.

A esos efectos, nuestro Tribunal Supremo estableció cuatro (4) criterios que los tribunales inferiores deberán tomar en cuenta previo a autorizar una enmienda a las alegaciones. Estos son los siguientes: (1) el impacto del tiempo transcurrido previo a la enmienda, (2) la razón de la demora, (3) el perjuicio de la otra parte, y (4) la procedencia de la enmienda solicitada. *Íd.,* pág. 199; *Romero v. S.L.G. Reyes,* 164 DPR 721, 730 (2005). Los mismos deberán ser considerados de forma conjunta al momento de determinar si procede la enmienda a las alegaciones. *S.L.G. Sierra v. Rodríguez,* 163 DPR 738, 750 (2005).

Asimismo, nuestro ordenamiento jurídico ha reconocido que el mero paso del tiempo no es, por sí solo, un factor determinante al evaluar la posibilidad de permitir una enmienda. *Colón Rivera v. Wyeth Pharm.,* supra, pág. 200; *S.L.G. Sierra v. Rodríguez,* pág. 749. De igual forma, el Tribunal Supremo enfatizó que el perjuicio que le pudiera causar la enmienda a la parte contraria es el factor de mayor

relevancia que deberá evaluar el foro primario. *Colón Rivera v. Wyeth Pharm.,* supra, pág. 199; *S.L.G. Sierra v. Rodríguez*, págs. 749-750. Ocurre perjuicio indebido cuando la enmienda: 1) cambia sustancialmente la naturaleza y el alcance del caso, convirtiendo la controversia inicial en tangencial y/o 2) obliga a la parte contraria a incurrir en nuevos gastos, alterar su estrategia en el litigio o comenzar nuevo descubrimiento de prueba. *Colón Rivera v. Wyeth Pharm., supra,* pág. 204.

**-C-**

El auto extraordinario de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal apelativo revisar las determinaciones del tribunal de origen. *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). La característica distintiva del recurso es la discreción encomendada al tribunal revisor para autorizar su expedición, y adjudicar los méritos de la cuestión presentada. El concepto discreción necesariamente implica la facultad de elegir entre diversas opciones. "Sin embargo, en el ámbito judicial, la discreción no debe hacer abstracción del resto del Derecho. ... Es decir, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una condición justiciera". *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *García v. Padró*, supra, págs. 334–335.

La controversia presentada ante este tribunal versa sobre un asunto post sentencia. En vista de ello, el recurso de *certiorari* es el mecanismo adecuado para solicitar la revisión conforme a lo resuelto expresamente en *IG Builders et al. v. BBVAPR,* 185 DPR 307, 339 (2012). De imponerse las limitaciones de la Regla 52.1, 32 LPRA Ap. V, a la revisión de dictámenes post sentencia, la parte peticionaria quedaría inevitablemente sin posibilidad de ejercer su derecho de revisión apelativa. *Íd.*

La Regla 40 del Reglamento del Tribunal de Apelaciones adquiere mayor importancia en casos como el de epígrafe, en los que no están disponibles métodos alternos para asegurar la revisión de la determinación cuestionada, pues se corre el riesgo "de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia". *Íd.* Para determinar si procede la expedición de un recurso discrecional de *certiorari* en determinaciones post sentencia, es preciso acudir a la Regla 40 del Reglamento del Tribunal de Apelaciones. *Banco Popular de Puerto Rico v. Gómez Alayón*, 213 DPR 314, 336-337 (2023). Los criterios enumerados en la Regla 40 sirven de guía para determinar la procedencia de la expedición del auto discrecional de *certiorari. Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *IG Builders et al. v. BBVAPR*, supra, pág. 338.

En un procedimiento post sentencia, este tribunal debe evaluar el recurso de *certiorari* a la luz de los criterios especificados en la Regla 40 de nuestro reglamento, que son los siguientes:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*-III-*

En esencia, la parte peticionaria alega que el Tribunal de Primera Instancia incidió al negarse a permitir la enmienda a su demanda. Sostuvo que las Reglas de Procedimiento Civil, *supra,* permiten enmendar el pliego cuando lo requiere la justicia. Además, planteó que, mediante la orden federal del 13 de junio de 2022 en el Caso Núm. 17-03283-LTS, se autorizó una excepción a la paralización de reclamaciones contra el Estado que fuesen dentro del límite estatutario. Por tanto, arguyó que procedía autorizar la reapertura del caso de epígrafe, y en consecuencia, permitir que la enmienda a los efectos de disminuir la cuantía reclamada.

Tal cual esbozado en el resumen doctrinal, el *Confirmation Order* emitido por el Tribunal de Distrito Federal, el 18 de enero de 2022, tuvo el efecto de paralizar toda reclamación monetaria que hubiesen sido presentadas contra el Estado. En adición, se estableció un proceso de solicitud de gastos administrativos ante dicho Foro para reclamar las deudas que nacieron posterior a la fecha en que se presentó la petición de quiebra, pero antes de la aprobación del Plan de Ajuste. Inicialmente se estableció como fecha límite el 13 de junio de 2022 para presentar dicha reclamación, y de no solicitar la misma, el ELA quedaría liberado de responder frente al acreedor. Sin embargo, mediante la *Orden* emitida el 20 de octubre de 2022, el Foro Federal extendió el término hasta el 18 de enero de 2023. Asimismo, se estableció que las reclamaciones contra el ELA, al amparo de la Ley Núm. 104, *supra,* que estuviesen dentro de los límites estatutarios de setenta y cinco mil dólares ($75,000.00) y ciento cincuenta mil dólares ($150,000.00) estarían exentas de cumplir con el referido proceso.

Ahora bien, en el caso ante nuestra consideración, surge que la parte peticionaria presentó una demanda por daños y perjuicios contra el ELA, el 13 de diciembre de 2021, en la cual reclamó una indemnización de siete millones de dólares (7,000,000.00) en total. Es decir que su causa de acción se presentó después de la petición de quiebra del Estado, pero antes del *Confirmation Order*.

A la luz de lo anterior, y debido a que la cuantía reclamada en su demanda excedía el límite estatuario dispuesto en la Ley Núm. 104, *supra*, el Tribunal de Primera Instancia determinó que la parte peticionaria tenía que presentar un *administrative expense claim* ante el Tribunal de Distrito Federal. No emana del expediente ante nos que la parte peticionaria hubiese recurrido de dicha determinación.

Surge de los hechos ante nuestra consideración que, el 18 de enero de 2023, la parte peticionaria presentó la referida solicitud de gastos administrativos ante el Foro Federal. Sin embargo, el 12 de junio de 2024, la Corte Federal no autorizó la misma por haberse presentado de forma tardía. Tampoco surge de los documentos en autos que la parte peticionaria haya recurrido de dicha determinación, por lo que el mismo advino final y firme.

Aun así, el 28 de octubre de 2025, un (1) año y tres (3) meses después de la denegatoria del Tribunal de Distrito Federal, la parte peticionaria presentó la petición de reapertura que nos cobija para enmendar la demanda y disminuir la cuantía reclamada, en vías de que la respectiva deuda pudiese estar exenta del procedimiento antes mencionado. Tras una sosegada búsqueda, no encontramos fundamento alguno que nos permita la concesión del remedio solicitado, pues conforme al *Confirmation Order* y las órdenes federales emitidas en el Tribunal de Distrito Federal, de no presentar la aludida solicitud de gastos administrativos dentro del término

dispuesto para ello, la deuda sería descargada en su totalidad, liberando al Estado frente al acreedor pertinente.

En virtud de que el derecho aplicable es claro en cuanto a las consecuencias que la ausencia de una solicitud de gastos administrativos oportuna acarreaba, y que la causa de acción de la parte peticionaria excedía los setenta y cinco mil dólares ($75,000.00), era el deber de la parte peticionaria presentar su reclamación dentro de la fecha establecida por el Foro Federal.

Por lo cual, justipreciamos que la parte peticionaria tenía el deber de presentar su reclamo de forma oportuna ante el Tribunal de Distrito Federal. Como mínimo, la parte peticionaria advino en conocimiento de la necesidad de presentar la solicitud de gastos administrativos desde que se emitió la orden federal pertinente y se publicó el edicto al respecto, anunciando la fecha límite para presentar su causa, al igual que las excepciones de dicho procedimiento. No obstante, no es hasta el 28 de octubre de 2025 que la parte peticionaria solicitó la enmienda a la demanda en controversia.

Por consiguiente, ante el cuadro doctrinal antes esbozado, no observamos que el Tribunal de Primera Instancia recurrido haya incurrido en perjuicio, parcialidad, error, o abuso de discreción al denegar la petición de reapertura del caso, así como de enmienda a las alegaciones. Siendo así, nos vemos con las manos atadas y procedemos a confirmar la *Resolución* recurrida.

### -IV-

Por los fundamentos antes esbozados, *expedimos* el recurso de *Certiorari* presentado y *confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones